UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NIGEL LEE WHITTAKER,

        Plaintiff,

Case No. 1:23-cv-284

Hon. ROBERT J. JONKER

v.

UNKNOWN LEONARD,
UNKNOWN SCHRADER,
UNKNOWN SIPKA, and
UNKNOWN GREGORY,

        Defendants.
                                       /

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Nigel Lee Whittaker ("Whittaker"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Whittaker sued Corrections Officer (CO) Leonard, CO Schrader, CO Sipka, and CO Gregory for incidents which occurred at Carson City Correctional Facility (DRF). This matter is now before the Court on defendants' motion for summary judgment on the basis of exhaustion (ECF No. 16).

      **I.**      **Whittaker's allegations**

Whittaker alleged that on September 26, 2022, defendants Leonard, Schrader, Sipka, and Gregory used excessive force against him in violation of his Eighth Amendment rights. Compl. (EFF No. 1). For his relief, Whittaker seeks money damages. *Id*. at PageID.13.

      **II.**     **Legal standard**

      **A.**     **Summary judgment**

1

Defendants moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Lack of Exhaustion

#### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available

2

administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

**2.     MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III. Discussion

The issue in this motion is whether Whittaker properly exhausted Grievance No. DRF-22-09-2059-26a/28e ("2059" or "DRF-2059"), in which he claimed that defendant Leonard, two other officers, and defendant Gregory were involved in the use of excessive force on September 26, 2022. *See* Grievance 2059 (ECF No. 1-4, PageID.26-31) (Whittaker's copy). Whittaker filed the grievance on September 28, 2022. *Id*.

Whittaker received a response on or about October 13, 2022, which indicated that he had been interviewed and referenced attachments (*i.e.*, "Step I Grievance Response Supplemental Forms"). Grievance 2059 (PageID.26, 32-33) (Whittaker's Copy). After an investigation and interview, the grievance was denied in the following decision:

> The faciltiy [sic] video clearly shows this incident. Prisoner Whittaker decided that he did not want to lock in 1200 Unit and refused staff orders to go back to his cell, never citing a valid reason as to why. Prisoners do not get to decide where and when they will lock. Staff began to escort Prisoner Whittaker to his cell when he decided to push back in to the staff and drop to the floor. This is actually the only assault that took place. Staff then placed Prisoner Whittaker in a restraint/escort chair for everyones [sic] safety, and took him to his cell where he was placed in a safe position to have the restraints removed. Prisoner then broke his cell window which ultimately led him to be placed in segregation. Staff followed policy and procedure and only used the minimum amount of force necessary to gain compliance from Prisoner Whittaker. Grievance denied.

Supplemental Form at PageID.32.

At this point, the record becomes convoluted. Whittaker took some steps to file a Step II appeal, but it is unclear as to what he submitted and there is no Step II decision. In her affidavit, DRF Grievance Coordinator Lisa Becher explained that she processed Whittaker's Step I grievance, but that he did not submit or re-submit a complete Step II appeal:

> 9. DRF-2059 was received by my office and filed at Step I on September 30, 2022.
>
> 10. Upon receipt of DRF-2059, I calculated and entered into the database the date that the Step I response was due from the Step I respondent back to me, October 16, 2022; and the date that the Step I response was due back to Whittaker, October 21, 2022.
>
> 11. I received the Step I response from the Step I respondent on October 13, 2022. I logged the Step I response and returned the Step I grievance and response to Whittaker on October 13, 2022.
>
> 12. Thereafter, I received a kite from Whittaker about DRF-2059, dated October 24, 2022; specifically, Whittaker claimed that he had not received the Step I response for DRF-2059, and requested the Step II grievance appeal form for DRF-2059. I responded to Whittaker's kite by preparing the Step II and III grievance appeal form (CSJ-247B) for DRF-2059, returned the CSJ-247B for DRF-2059 to Whittaker on October 25, 2022.
>
> 13. Thereafter, Whittaker submitted his CSJ-247B for DRF-2059 to Step II; Whittaker's submission was incomplete because it did not include the Step I grievance or response, and I noted this issue in the database. On the submitted CSJ-247B for DRF-2509, I highlighted the "Instructions" portion of the CSJ-247B and wrote near this portion:
>
>> Step I Grievance/Response sent to you on 10/13/22. Submit both with your appeal.
>
> I then returned the CSJ-247B for DRF-2509 to Whittaker without processing. Whittaker never resubmitted the CSJ-247B for DRF-2059 with the necessary Step I grievance and response forms to Step II for processing.

Becher Aff. (ECF No. 17-4, PageID.119-120) (internal citations omitted).

In an affidavit filed in opposition to defendants' motion, Whittaker contested Becher's timeline and stated that he submitted a Step II appeal on October 27, 2022,

5

4. On the morning of October 27, 2022, I submitted a completed Step II grievance appeal form to grievance coordinator Becher's office, along with the "goldenrod" copy of my Step I grievance (CSJ-247A) in compliance with the instructions that I was allowed to follow on the Step II grievance appeal form (CSJ-247B) since I did not receive the "white" copy of my Step I grievance (CSJ-247A) along with a Step I response in a timely manner.

5. After grievance coordinator Becher received my Step II grievance appeal along with the "goldenrod" copy of my Step I grievance (CSJ-247A), she ignored the instructions that I followed on the Step II grievance appeal form (CSJ-247B) and thwarted my effort to exhaust my administrative remedy at Step II by refusing to process my appeal and then returned both my Step II grievance appeal form and the "goldenrod" copy of my Step I grievance (CSJ-247A) to me on Friday, November 4, 2022.

6. Although grievance coordinator Becher claimed that she sent my Step I grievance and the Step I response to me on 10-13-22, I did not receive those documents.

7. On November 15, 2022, the Carson City Correctional Facility transferred me to the Oaks Correctional Facility.

Whittaker Aff. (ECF No.20, PageID.133-134).

These dueling affidavits from Whittaker and Grievance Coordinator Becher create a genuine issue of material fact as to whether Whittaker re-submitted the Step II appeal for processing.

Finally, defendants contend that Whittaker did not properly exhaust the grievance because his Step III appeal was rejected. *See* Defendant's Brief (ECF No. 17, PageID.92-93); Defendant's Reply (ECF No. 22, PageID.140-141). "As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Brooks v. Hardy*, No. 1:16-cv-1336, 2017 WL 6048822 at *2 (W.D. Mich. Dec. 6, 2017).

6

>Defendants' contention is without merit.  MDOC records state that,
>
>The Step III appeal is **REJECTED** at Step III pursuant to PD 03.02.130 "Prisoner/Parolee Grievances" for the following reason(s) DRF-22-09-2059-26a - Missing Step I & II responses

Grievance 2059 at PageID.110.  The MDOC's Step III rejection did not cite a specific grievance procedure within PD 03.02.130 for rejecting the appeal.  *See Brooks*, 2017 WL 6048822 at *2.  In this regard, PD 03.02.130 ¶ H states that, "Grievances shall not be rejected or denied solely because the prisoner has not included with his/her grievance exhibits or other documents related to the grievance[.]"  PD 03.02.130 (ECF No. 19-2, PageID.91).  Based on the language of PD 03.02.130 ¶ H, courts have concluded that the failure to include grievance responses in the Step III appeal does not preclude proper exhaustion.  *See Margosian v. Martinson*, No. 1:21-cv-1061, 2023 WL 1442426 at *2 (W.D. Mich. Feb. 1, 2023).  Here, the MDOC could not reject Whittaker's Step III appeal for the stated reason.

In summary, a genuine issue of material fact exists as to whether Whittaker re-submitted a Step II appeal.  Accordingly, defendants' motion for summary judgment should be denied.

### IV.    Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (ECF No. 16) be **DENIED**.

Dated:  May 24, 2024                              /s/ Ray Kent  
                                                                        RAY KENT  
                                                                        United States Magistrate Judge

Any objections to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).